IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs July 21, 2004

## STATE OF TENNESSEE v. STEFANIE M. HENSON

**Appeal from the Criminal Court for Davidson County**
**No. 2003-B-1228     Cheryl Blackburn, Judge**

---

**No. M2003-02413-CCA-R3-CD - Filed August 10, 2004**

---

The defendant, Stefanie M. Henson, pled guilty in the Davidson County Criminal Court to robbery, a Class C felony. Pursuant to the plea agreement, the defendant received a sentence of four years for the offense, with the manner of service to be determined by the trial court. After a sentencing hearing, the trial court denied the defendant's request for an alternative sentence and ordered that she serve her sentence in the Department of Correction. The defendant appeals, claiming that the trial court erred by ordering that she serve her sentence in confinement. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER, J. and JOE G. RILEY, SP. J., joined.

Ross E. Alderman, District Public Defender; Jeffrey A. DeVasher, Assistant Public Defender (on appeal); and Amy Dawn Harwell, Assistant Public Defender (at trial), for the appellant, Stefanie M. Henson.

Paul G. Summers, Attorney General and Reporter; Kathy D. Aslinger, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Bret Thomas Gunn, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

This case relates to the defendant's conviction for robbing her seventy-one-year-old grandmother, Marie Stewart, on February 4, 2003. At the guilty plea hearing, the state gave the following factual account of the crime: On February 4, the defendant went to her grandmother's house in order to ask for money. Her grandmother, the victim, already had an order of protection against the defendant and told her that she would not give her money. The defendant then asked to use the victim's phone and when the victim let her inside, she went to the bedroom and grabbed the victim's purse. When the victim attempted to get her purse back, the defendant punched, kicked,

and knocked the victim to the floor. The defendant took cash, credit cards, and other personal items from the victim.

At the sentencing hearing, the defendant testified that on February 4, 2003, around 3:00 a.m, she went to the victim's house to ask for money because she did not have anywhere to stay that night. She said she also wanted money in order to purchase crack cocaine. She said that the victim had already given her money earlier in the evening and that she wanted additional money to buy more drugs. She said that when she arrived at the victim's home, she asked the victim if she could go inside and retrieve clothes that she had left in the house. She said that after she had packed her clothes, she begged and argued with the victim for more money. She said that when the victim refused, she grabbed the victim's purse and that the victim tripped over a garbage bag the defendant had used to pack her clothes. She acknowledged scratching the victim's arms during the altercation. She said she had not used drugs since being incarcerated. She said that if she were given probation, she would work at her father's painting business and live with her aunt until she had enough money for a place of her own. She said that her mother had contacted two drug treatment facilities and that she would love to go to an inpatient program.

On cross-examination, the defendant testified that she was convicted of assaulting her mother in March 2002 when she threw a cigarette case at her mother, hitting her in the head. She said the victim had an order of protection against her because she had continuously asked her for money. She denied that the victim was afraid of her. She acknowledged violating the order of protection twice before this offense occurred. She said that on both occasions, she did not leave when the victim asked and the police arrested her. She acknowledged telling the victim that she needed money for a motel room or for a bill but that she was actually using the money for drugs. She said that she entered the Chance program while in jail but that she had to quit due to her epilepsy. She said she had previously attended programs, in part, for drug abuse at Vanderbilt and Cumberland Heights.

Debbie Henson, the defendant's mother, testified that she had confirmed that the defendant could receive drug treatment at Tennessee Christian, where she could work during the day and attend treatment classes at night. She said that The Samaritan Center, an inpatient rehabilitation program, was another possibility for treatment. She said she would make sure the defendant attended a drug treatment class the following week if the defendant was given probation.

According to the defendant's presentence report, the then nineteen-year-old defendant dropped out of school but obtained her GED on March 29, 2001. She reported that she had neck and back problems but was able to walk. She said she began using marijuana at the age of thirteen and cocaine at the age of fifteen. She said she used one eight ball of cocaine a day until she was incarcerated. The defendant has previously been convicted of assault and battery and of violating an order of protection.

The trial court determined that the defendant should not be given probation, stating that the defendant had been convicted of a very serious offense involving her grandmother. It found that the defendant was untruthful when she testified that she was unable to complete the Chances drug

treatment program in jail because she was epileptic. The court stated that the defendant had simply quit Chances. In addition, the trial court believed that the defendant should not receive probation because she had anger issues and had violated an order of protection.

The defendant contends that the trial court erred by denying her request for probation. She argues that the court made no findings that would rebut the presumption that she is a favorable candidate for probation and that a review of the record reveals that factors warranting a denial of probation are not present in this case. The state claims that the defendant was properly denied probation because confinement was necessary to avoid depreciating the seriousness of the offense. We hold that the defendant should serve her four-year sentence in incarceration.

When a defendant appeals the manner of service of a sentence imposed by the trial court, this court conducts a de novo review of the record with a presumption that the trial court's determinations are correct. T.C.A. § 40-35-401(d). However, the presumption of correctness is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The burden is on the appealing party to show that the sentence is improper. T.C.A. § 40-35-401(d), Sentencing Commission Comments. This means that if the trial court followed the statutory sentencing procedure, made findings of fact that are adequately supported in the record, and gave due consideration and proper weight to the factors and principles that are relevant to sentencing under the 1989 Sentencing Act, we may not disturb the sentence even if a different result were preferred. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

When determining if incarceration is appropriate, a trial court should consider whether (1) confinement is needed to protect society by restraining a defendant who has a long history of criminal conduct, (2) confinement is needed to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to people likely to commit similar offenses, or (3) less restrictive measures than confinement have frequently or recently been applied unsuccessfully to the defendant. Ashby, 823 S.W.2d at 169 (citing T.C.A. § 40-35-103(1)(A)-(C)). The trial court may also consider the mitigating and enhancing factors set forth in T.C.A. §§ 40-35-113 and -114. T.C.A. § 40-35-210(b)(5); State v. Boston, 938 S.W.2d 435, 438 (Tenn. Crim. App. 1996). In addition, a trial court should consider a defendant's potential or lack of potential for rehabilitation when determining if an alternative sentence would be appropriate. T.C.A. § 40-35-103(5); Boston, 938 S.W.2d at 438. In conducting a de novo review, we must consider (1) the evidence, if any, received at the trial and sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct, (5) any mitigating or statutory enhancement factors, (6) any statement that the defendant made on her own behalf, and (7) the potential for rehabilitation or treatment. T.C.A. §§ 40-35-102, -103, -210; see Ashby, 823 S.W.2d at 168.

In the present case, the defendant argues that the trial court did not make specific findings as required under T.C.A. § 40-35-103 and, therefore, that our review of the trial court's ruling should be de novo with no presumption of correctness. In denying probation, however, the trial court stated

-3-

that the defendant "has been convicted of a very serious offense involving her grandmother which involves the violation also of an order of protection." Implicit in this statement is that the trial court denied the defendant's probation, in part, to avoid depreciating the seriousness of the offense. Further, the trial court stated the following regarding the defendant's amenability to rehabilitation:

> [O]rdinarily I wouldn't even consider such a request to have her sentence suspended without her completing some [rehabilitation] programs, most specifically Chances.
>
> Her testimony the other day was that she didn't complete it because of her medical condition, and I actually wanted to find out if that was accurate. That doesn't see[m] quite fair for someone who has a seizure disorder not to be able to have some early release, just for the simple reason because she needed her medication.
>
> Well, the story is a little bit different today, so as a result of that, Ms. Henson, I'm not going to release you. I mean, if you want to finish Chances and demonstrate to me that there has been, that you've completed that. You do have some anger issues. Clearly, you do, but given that this involves a violation of the order of protection, I want you to finish the Chances program, so motion denied.

We believe that this statement shows that the trial court also denied the defendant probation based on her lack of potential for rehabilitation while released. The trial court's ruling is entitled to the presumption of correctness.

With regard to T.C.A. § 40-35-103(1)(B), that confinement is necessary to avoid depreciating the seriousness of the offense, our supreme court, in State v. Travis, 622 S.W.2d 529, 534 (Tenn. 1981), stated that a trial court may deny an alternative sentence based upon this factor if the circumstances of the offense are "especially violent, horrifying, shocking, reprehensible, offensive, or otherwise of an excessive or exaggerated degree." Here, the stipulated facts at the guilty plea hearing include the defendant grabbing, punching, and knocking her seventy-one-year-old grandmother to the floor. The defendant claimed at the sentencing hearing that the victim merely tripped over a garbage bag and, in addition, we note that in the stipulation of facts at the guilty plea hearing and at the sentencing hearing, the prosecution presented no facts that the victim was injured. However, given that the defendant agreed at the guilty plea hearing that the state's version of the facts was correct, that she presented no medical records or proof at the sentencing hearing to show that her grandmother was uninjured, and that she has not shown her guilty plea to be involuntary, we take as true that the defendant "punched, kicked, and knocked down her grandmother." We conclude that the punching, kicking, and throwing to the floor an elderly grandmother in order to steal her purse would be "excessive" or to an "exaggerated degree." Id. Under this circumstance, the defendant has failed to rebut the presumption that the trial court was correct in concluding that confinement was necessary in order to avoid depreciating the seriousness of the offense.

-4-

With regard to the trial court's determination that the defendant was not amenable to probation, the court stated that because the defendant quit the Chances rehabilitation program while in jail, she should not be given probation. See T.C.A. § 40-35-103(5) (stating that the potential or lack of potential for the rehabilitation or treatment of a defendant should be considered when determining if an alternative sentence is proper). In addition, we note that the defendant acknowledged attending several other rehabilitation programs in the past, which obviously proved unsuccessful, as evidenced by the offense in the present case. We conclude that the trial court correctly denied probation both on the basis of the defendant's lack of potential for rehabilitation because her past treatment programs had proven inadequate to change her behavior and because confinement was necessary to avoid depreciating the seriousness of the offense.

Based upon the foregoing and the record as a whole, we affirm the judgment of the trial court.

_____
JOSEPH M. TIPTON, JUDGE